(No. 3983— )

HELEN G. NORMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 14, 1947.*

E. E. DENISON and R. W. HARRIS, for claimant.

GEORGE F. BARRETT, Attorney General; and C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

ECKERT, C. J.

This action is brought under Section 3 of the Workmen's Occupational Diseases Act, (Illinois Revised Statutes, 1943, Chapter 48, Section 172.3), by Helen G. Norman, an employee of the respondent, for damages sustained as a result of contracting tuberculosis while

working as an attendant at the Alton State Hospital, Alton, Illinois. Claimant is a married woman whose husband was in service during the time of her employment by the respondent, is thirty-two years of age, and was first employed by the respondent on February 14, 1944. Prior to that time she was a strong and healthy young woman who had had no serious illness of any kind, and who had been active in the performance of the ordinary duties of a housewife. At the time of her employment she was thoroughly examined by a staff physician at the Alton State Hospital, and was found to be in good health. No evidence of tuberculosis was found at that time in any of the tests which were made.

Every morning during her employment, claimant took a group of patients from wards RCF 1, in fair weather, for a walk out of doors, and in inclement weather, to the recreation room. These patients were extremely violent and combative and deteriorated, and some of them were suffering from tuberculosis. The claimant, while on duty, and in the course of her employment on the grounds and in the recreation room, came in direct contact with these patients. Being insane, they were uncooperative and not able to control their coughing and expectoration. Claimant wore the usual uniform of an attendant at the institution, but was not provided with a special gown or mask of any kind for the covering of the mouth or nose.

Claimant, from the time of her employment in February, 1944, up to and including the summer of that year, also came in direct contact with one Sarah Brown, a patient of ward RCF 1. She took this patient out every day for recreation until the patient was assigned to Maple Cottage, at the institution, a ward for tubercular patients. While she was confined in this ward, the patient died from tuberculosis.

Claimant's regular hours of work were from 8 o'clock in the morning to twelve o'clock noon, and from one o'clock in the afternoon until five o'clock in the afternoon, five days per week, and one-half day on Saturday. Twice each week, after claimant had worked eight hours during the day, she was assigned to work at night, usually Monday night at a card party, and Thursday night at a dance for the patients, a total of more than four hours and thirty-five minutes each week. She thus worked over eight hours in a twenty-four hour period on Monday and Thursday, and worked over forty-eight hours every week while she was employed at the institution.

Shortly before May 24, 1945, claimant began feeling tired, and experienced shortness of breath. An X-ray picture of her lungs was taken, and she was given a physical examination. Dr. Alfred P. Bay, managing officer of the institution, then called claimant to his office and informed her that the X-rays and the examination indicated she had contracted tuberculosis.

On June 3, 1945, Dr. Bay ordered claimant to bed, and she was hospitalized at the institution until November 21, 1945. She still runs a temperature, is still suffering from active tuberculosis, and is unable to perform her ordinary duties as a house wife. She now has household help, sleeps late each morning, and rests each afternoon. Likewise she has not been able to return to her work at the institution, and because of her illness was granted a leave of absence on January 1, 1946.

All necessary hospital, medical, and nursing services were furnished by the respondent while claimant was hospitalized at the institution. During the year prior to claimant's hospitalization she received a total salary of $1,367.00. Thereafter, for a period of six months, she

received disability compensation in the aggregate amount of $630.00. In addition to the medical, surgical, and hospital services furnished by the respondent, claimant has expended on her own behalf the sum of $325.00. She asks damages in the total sum of $20,000.00.

Dr. Truman G. Drake, called as a witness on behalf of claimant, stated that he examined claimant on January 3, 1946, and took X-ray pictures at that time. He stated that claimant's right lung, anteriorly, was slightly less resonant than the left; and in the left lung, beneath the breast, there were a few moist rales; that gastric washings for tubercular bacilli were negative, but the sedimentation rate was high, indicating a probability of chronic infectious process. The chest X-ray showed a soft opacity in the right lung between the first and second ribs anteriorly, which was interpreted as being a tuberculous lesion. The doctor also testified that subsequent examinations revealed claimant's temperature always slightly above normal; revealed a consistent elevation of the sedimentation rate; and revealed the right upper lobe lesion to be persistent and without marked change. Dr. Drake stated:

"On clinical grounds, we must consider this case one of pulmonary tuberculosis, which still retains enough activity to cause constitutional symptoms and which will require constant and careful observation and treatment for a long period to come."

In a similar case, (Wheeler vs. State, 12 C. C. R. 254), it was held that the State of Illinois may properly be made respondent, in the Court of Claims, in an action for damages for injury to health, resulting from a disease contracted by a state employee in the course of his employment, and proximately caused by the State's negligence, under the terms and provisions of the Workmen's Occupational Diseases Act. The State not having elected

to provide and pay compensation under Section 4 of the Workmen's Occupational Diseases Act, the employee has a right of action, under Section 3 of the Act. That section provides that violation by an employer of any statute of this State, intended for the protection of the health of employees, shall constitute negligence of the employer within the meaning of the section.

It is apparent from the record that claimant was frequently required to work more than eight hours during any one day, and more than forty-eight hours during any one week. This was a violation of "An Act Concerning the Hours of Employment of Females in Certain Occupations," (Illinois Revised Statutes, 1943, Chapter 48, Section 5, which provides:

> "No female shall be employed . . . in any public or private institution or offices thereof, incorporated or unincorporated in this State, more than eight hours during any one day or more than forty-eight hours in any one week . . ."

The violation of this statute by the respondent was clearly a violation of a statute intended for the protection of the health of employees, and constitutes negligence under Section 3 of the Workmen's Occupational Diseases Act. (*Wheeler* v. *State,* supra.)

The claimant has met all of the requirements of Section 3 of the Workmen's Occupational Diseases Act, and the record amply sustains the allegations of her complaint. She was confined to her bed for a period of approximately twenty-six weeks during her illness. From the time she left the hospital on November 21, 1945, until the hearing before Commissioner Jenkins, on October 18, 1946, she was unable to perform her usual duties. The disease is still active; her future health is uncertain, and her present physical condition is not that of a normal young woman of the same age. The court is of the

133

opinion that claimant is entitled to damages under Section 3 of the Workmen's Occupational Diseases Act in the amount of $2,500.00. An award is therefore entered accordingly.